# United States Court of Appeals
## For the First Circuit

No. 05-1620

VEKKY RICHARD TICOALU,

Petitioner,

v.

ALBERTO R. GONZÁLES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Siler,* Senior Circuit Judge,
and Howard, Circuit Judge.

Yan Wang, on brief for petitioner.
Thomas L. Holzman, Special Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Peter D. Keisler, Assistant Attorney General, Civil Division, and Terri J. Scadron, Assistant Director, on brief for respondent.

December 28, 2006

---

* Of the Sixth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Vekky Richard Ticoalu ("Ticoalu"), a native and citizen of Indonesia, seeks review of a March 30, 2005 decision of the Board of Immigration Appeals ("BIA") adopting and affirming an Immigration Judge's ("IJ") decision to deny his application for asylum and withholding of removal, and declining to grant his motion to remand.  Ticoalu submitted the motion to remand while his appeal was pending before the BIA. Ticoalu asserted that new material evidence, including an order granting asylum to his brother, demonstrated worsening country conditions.  After careful consideration, we reverse the BIA's denial of the motion to remand, under the circumstances presented in the case.

## I.  Factual and Procedural History

Ticoalu was admitted to the United States as a non-immigrant on or about March 7, 2001, with authorization to remain until September 6, 2001.  He was placed in removal proceedings upon issuance of a Notice to Appear dated June 6, 2002.  Ticoalu filed an application for asylum on or about July 31, 2002 -- over one year after entering the United States.  The application was rejected as untimely and the IJ found that Ticoalu's failure to timely file was not adequately explained either by changed circumstances in his home country affecting his basis for fearing harm, or by any other circumstances beyond his control.

Thereafter, the IJ treated Ticoalu's asylum application as an application for withholding of removal. Ticoalu alleged eligibility for withholding of removal, asserting that it is more likely than not he will be harmed in Indonesia on account of his religion. Specifically, Ticoalu indicated that on two occasions he was a "victim of physical violence at the hands of Muslims" on account of his Christian faith, and that he fears future persecution because of the increasing number of Christians killed by Muslims in Indonesia. The two incidents occurred in separate areas of Jakarta in May 1998 and July 2000.

A month after the second incident, Ticoalu left Jakarta and moved back to Manado, the capital of the Sulawesi Utara province, where his parents and the majority of his siblings live. The province forms the northern-most area of the island of Sulawesi. Ticoalu began working there, and experienced no difficulty in either his place of employment or home between his arrival in August 2000 and his departure for the United States in March 2001.

The IJ concluded that Ticoalu was never targeted for harm on account of his religion and that the two alleged incidents were isolated occurrences. The IJ also found that recent violence in Indonesia against Christians is not countrywide and Ticoalu has a safe haven in Manado.

Ticoalu appealed the IJ's denial of his application for withholding of removal to the BIA. While his appeal was pending, Ticoalu submitted a motion to remand. In the motion, Ticoalu indicated that his brother's separate asylum application was granted by another IJ, and he alleged that conditions in Indonesia had worsened. With the motion, Ticoalu included six 2004 periodical articles concerning events in Indonesia. One of the articles reported inter-religious violence in central Sulawesi. Included in the motion were also a copy of the July 20, 2004 order granting asylum to his brother, and copies of the brother's asylum application and affidavit. Both the brother's application and accompanying affidavit were dated October 18, 2003.

Ticoalu's brother also alleges that he was the victim of inter-religious violence in Jakarta. In 1998, during a religious riot, he was pulled from a bus by Muslim rioters, beaten, and stabbed. He thereafter returned to Modona. In Modona the brother also lived without incident. In his affidavit, the brother says he traveled to the United States in 2000 because of his fear of being subject to inter-religious violence.

The BIA adopted and affirmed the denial of Ticoalu's asylum application and petition for withholding of removal, and denied Ticoalu's motion to remand. In regard to Ticoalu's motion for remand, the BIA determined that the periodical articles, including the article reporting inter-religious violence in central

-4-

Sulawesi, "contain general background information and are not highly probative of the respondent's specific claim."  The BIA also noted that the brother's affidavit was executed prior to Ticoalu's final hearing on October 22, 2003, and is therefore not new evidence and could not be submitted.  The BIA did not directly address the probative value of the brother's grant of asylum.

## II.  Discussion

Ticoalu raises three challenges to the BIA's opinion: (1) that the denial of his asylum application is a due process violation; (2) that substantial evidence supports the BIA's denial of his request for withholding of removal; and (3) that the BIA's denial of his motion to remand was an abuse of discretion.  We begin by disposing of the due process claim before moving on to the BIA's denial of Ticoalu's motion to remand.  Our reversal of the BIA's denial of the motion to remand precludes the need to address the denial of withholding of removal.

Ticoalu claims that the one-year time limit on asylum applications is a violation of his Fifth Amendment right to due process.  Ticoalu does not challenge that he failed to timely file his asylum application, or that he had no justification for the late filing.  We review such legal questions de novo, subject to established principles of agency deference. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); DaCosta v. Gonzáles, 449 F.3d 45, 49 (1st Cir. 2006).  Our review concludes that Ticoalu does not

-5-

have a cognizable claim. Due process rights do not accrue to discretionary forms of relief, id. at 50 (discretionary forms of relief do not rise to the level of a protected interest), and asylum is a discretionary form of relief. Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) ("discretionary relief of asylum").

We review the BIA's denial of Ticoalu's motion for remand for abuse of discretion. Maindrond v. Ashcroft, 385 F.3d 98, 100 (1st Cir. 2004); Toban v. Ashcroft, 385 F.3d 40, 45 (1st Cir. 2004). An abuse of discretion occurs "where the BIA misinterprets the law, or acts either arbitrarily or capriciously." Toban, 385 F.3d at 45 (quoting Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004)). We defer to the BIA's factual determinations if they are based on "reasonable, substantial, and probative evidence." Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir. 2004).

The BIA may only grant a motion to remand "based on new facts if the 'evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.'" Toban, 385 F.3d at 45 (quoting 8 C.F.R. § 1003.2 (c)(1)). Here, we defer to the BIA's determination that the five timely periodical articles reporting violence on islands neighboring Sulawesi are not material to Ticoalu's claim. Although we find somewhat compelling Ticoalu's argument that the articles' evidence of violence on the islands neighboring Sulawesi demonstrates a potential danger to his well being, we do not find

it unreasonable that the BIA concluded that the information was too general to be "probative of his claim." We find unreasonable, however, the BIA's dismissal of the timely periodical article reporting violence in central Sulawesi. Manado is located in northern Sulawesi and is not so distant from central Sulawesi as to be obviously isolated from the violence reported in the submitted article. The article may undermine the IJ's conclusion, adopted by the BIA, that northern Sulawesi is a safe haven. The article should be reviewed on remand.

The BIA also never directly addressed whether the July 24, 2004 order granting asylum to Ticoalu's brother was material to Ticoalu's claim. We do not understand why this timely order was not discussed by the BIA. The brother was more severely injured by inter-religious violence in Jakarta, but he too returned to Modona afterward. It seems likely that either the IJ in the instant case or the IJ who issued Ticoalu's brother's order has erred in assessing the extent of inter-religious violence in Indonesia, and, in particular, in Sulawesi. The government suggests that Ticoalu's brother's grant of asylum is only minimally probative because the order is not accompanied by the IJ's decision and therefore the reasoning is not apparent. It would be preferable to understand the IJ's reasoning; however, this does not explain why the BIA would not consider worthy of re-examination the

IJ's' potentially conflicting views of the conditions in Indonesia. The order shall be included on remand.

Ticoalu's brother's affidavit and asylum application should also be reviewed on remand. Although the affidavit and application were available at the time of Ticoalu's final hearing, these documents did not become material to Ticoalu's claim until his brother was granted asylum. The order granting asylum to Ticoalu's brother gave new weight to the assertions of these documents. The bench is likely to benefit from their inclusion on remand.

### III. <u>Conclusion</u>

The BIA's order is affirmed in part and reversed in part. The case is remanded in accordance with this opinion.

**<u>Affirmed in part, Reversed in part, and Remanded</u>**.